UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                               CIVIL ACTION

VERSUS                                                                              No. 13-4721

LAND ET AL.                                                                         SECTION I

ORDER AND REASONS

Before the Court is a motion[1] filed by the government to enforce pre-condemnation agreements to sell. Defendants have filed an opposition,[2] to which the government filed a reply.[3] For the following reasons, the motion is **GRANTED**.

BACKGROUND

On November 8, 2005, Benny Rousselle, the President of Plaquemines Parish, commandeered the land at issue[4] in order "to obtain borrow material and/or stockpile material for construction (repair and rehabilitation) of the New Orleans to Venice Hurricane Protection Levees in Plaquemines Parish."[5] On July 6, 2007, Linda C. LaBure, Chief of the New Orleans Real Estate Division of the Army Corps of Engineers, sent a letter notifying defendants, who jointly owned the majority of the land at issue,[6] of the government's need to acquire the

---

[1] R. Doc. No. 69.
[2] R. Doc. No. 64.
[3] R. Doc. No. 69.
[4] The land at issue constitutes three separate tracts, but all three are similarly situated for purposes of this order and the Court refers to all three collectively where appropriate.
[5] R. Doc. No. 60-8, at 1.
[6] One of the landowners, Spiro Pavlovich, Jr., cannot be located. *See* R. Doc. No. 60-2, at 2; R. Doc. No. 60-7, at 2. Counsel for the government has advised the Court that the government has attempted service by publication.

property.[7] The July 6, 2007 letter included an offer of $194,800 for all of the interests that the government required.[8]

The first page of the letter listed a "breakdown" of the specific "Estate[s]" that the government sought, describing a "Road Easement/Servitude" on one tract[9] and a "Fee, EXCLUDING MINERALS" on two other tracts.[10] The letter also included a number of attachments, including a list of purported owners[11] and a detailed description of the property.[12] Included with these attachments was a page titled "Fee, Excluding Minerals."[13] Underneath that title, the page reads:

> The fee simple title to the land, subject, however, to existing easements for public roads, and highways, public utilities, railroads and pipelines; excepting and excluding from the taking all oil, gas, and other minerals in and under said land and all appurtenant rights for the exploration, development, production, and removal of said oil, gas, and other minerals.[14]

In August 2007,[15] defendants made a counteroffer in the total amount of $200,000,[16] which the government accepted on December 21, 2007.[17] The first page of the counteroffer states, in pertinent part, that it was an offer to sell "the fee simple title to the following described land, with the buildings and improvements thereon, and all rights, hereditaments, easements, and appurtenances thereunto belonging, located in the Parish of Plaquemines, State of Louisiana,

---

[7] *See, e.g.*, R. Doc. No. 60-3, at 1; R. Doc. No. 60-2, at 2.
[8] R. Doc. No. 60-2, at 2; *see also, e.g.*, R. Doc. No. 60-3, at 1, 32.
[9] *See, e.g.*, R. Doc. No. 60-3, at 1. The easement is not at issue in this case.
[10] *See, e.g.*, R. Doc. No. 60-3, at 1, 32.
[11] R. Doc. No. 60-3, at 3, 34.
[12] R. Doc. No. 60-3, at 4-9, 35-38.
[13] R. Doc. No. 60-3, at 4.
[14] R. Doc. No. 60-3, at 4.
[15] The landowners signed the offer letter on different dates. *See, e.g.*, R. Doc. No. 60-4, at 12-19.
[16] R. Doc. No. 60-2, at 2; *see, e.g.*, R. Doc. No. 60-4, at 9-12, 32-34, 46-49.
[17] R. Doc. No. 60-2, at 2; *see, e.g.*, R. Doc. No. 60-4, at 1, 24.

bounded and described as set forth in Exhibit "A" attached hereto and made a part hereof."[18] The first page also states, "The Vendor [defendants] reserves only the following rights and interests in the above described property: (namely:) MINERAL RIGHTS[.]"[19] Included within exhibit A is a page titled "Fee, Excluding Minerals" that is identical to the page that was sent with the government's initial offer letter.[20]

Because of the inability to locate one of the landowners,[21] the government filed a complaint in condemnation on June 5, 2013.[22] Defendants answered the complaint and alleged that the $200,000 "is inadequate compensation for the land taken" because it "fails to compensate Defendants for the value of the borrow material taken."[23] On February 4, 2014, the government filed the instant motion seeking to enforce the pre-complaint agreements to sell.[24]

## STANDARD OF LAW

"'Though the meaning of 'property' . . . in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law.'" *United States v. 0.073 Acres of Land*, 705 F.3d 540, 544 (5th Cir. 2013) (quoting *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 279 (1943)); *see also United States v. 79.31 Acres of Land*, 717 F.2d 646, 647 (1st Cir. 1983) ("When . . . federal courts are presented with questions of ownership of condemned land, it is appropriate for them to look to state law for resolution of the dispute.") (citing *United States v. Certain Property Located in Manhattan*, 306 F.2d 439 (2d Cir. 1962)). Accordingly, the

---

[18] R. Doc. No. 60-4, at 9, 46.
[19] R. Doc. No. 60-4, at 9, 46.
[20] R. Doc. No. 60-4, at 23, 58.
[21] *See, e.g.*, R. Doc. No. 60-5, at 1.
[22] R. Doc. No. 1.
[23] R. Doc. No. 14, at 2.
[24] R. Doc. No. 60.

Court will look to Louisiana law to determine the ownership of the mineral rights of the land at issue.

"Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tex. Meridian Res. Exp. Inc.*, 180 F.3d 664, 668 (5th Cir. 1999) (citing *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)). "The interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "The words of a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

"When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tex. E. Transmission Corp.*, 145 F.3d at 741) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

## DISCUSSION

Defendants do not dispute the validity of the agreements.[25] Defendants' opposition to the enforcement of the agreements relates solely to the reservation of rights that was contained in the August 2007 counteroffers.[26] Defendants look only to one particular line on the first page of their counteroffer, which states, "The Vendor [defendants] reserves only the following rights and

---

[25] *See* R. Doc. No. 64, at 1-2.
[26] *See* R. Doc. No. 64, at 2.

4

interests in the above described property: (namely:) MINERAL RIGHTS[.]"[27] Based solely on this language from the counteroffer, defendants conclude, "[I]t is undisputed that any prior agreements, including the 2007 Agreements, between the US and the Defendants did not include compensation for the Defendants' mineral rights in the Tracts."[28]

What defendants ignore, however, is the language immediately preceding the quoted section that incorporates exhibit A as a part of the agreement.[29] Included within exhibit A is the page titled "Fee, Excluding Minerals," which, if it is to have any meaning at all, could serve no purpose other than as a description of the estate that was being sold and as a definition of the mineral rights that were reserved to defendants.[30] *See Tex. E. Transmission Corp.*, 145 F.3d at 742 ("Contract provisions susceptible to different meanings should be interpreted 'to avoid neutralizing or ignoring any of them or treating them as surplusage[.]'") (quoting *Lambert v. Marland Cas. Co.*, 418 So. 2d 553, 559 (La. 1982)); *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. 10-4441, 2013 WL 990066, at *5 (E.D. La. Mar. 13, 2013) (Morgan, J.) ("Under Louisiana contract law, terms contained in other documents may be incorporated into a contract, either by attaching those documents to the contract or by referencing those documents in the contract.") (citing *Russellville Steel Co. v. A&R Excavating, Inc.*, 624 So. 2d 11 (La. App. 5 Cir. 1993)); *see also* La. Civ. Code. art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."). Accordingly, the crucial language regarding defendants'

---

[27] R. Doc. No. 64, at 2 (quoting R. Doc. No. 60-4, at 9, 46).
[28] R. Doc. No. 64, at 2.
[29] R. Doc. No. 60-4, at 9, 46 ("Vendor . . . offers to sell and convey . . . the fee simple title to the following described land, . . . bounded and described as set forth in Exhibit 'A' attached hereto *and made a part hereof* . . . .") (emphasis added).
[30] R. Doc. No. 60-4, at 23, 58.

reservation of rights is not "minerals" in isolation, but rather, "minerals" as it is meant within the context of the phrase "all oil, gas, and other minerals."[31]

The phrase "oil, gas, and other minerals" has a well-established meaning within Louisiana law: "The words 'mineral rights' necessarily must be read in connection with the things subsequently named, to-wit, 'oil rights' and 'gas rights' and should be confined to things of that nature." *Holloway Gravel Co. v. McKowen*, 9 So. 2d 228, 232-33 (La. 1942); *see also Cont'l Grp., Inc. v. Allison*, 404 So. 2d 428, 431 (La. 1981); La. Civ. Code. art. 2051 ("Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include."). "Oil, gas, and other minerals" has been interpreted to exclude materials such as sand, gravel, and lignate coal. *See Holloway Gravel*, 9 So. 2d at 233; *River Rouge Minerals, Inc. v. Energy Res. of Minn.*, 331 So. 2d 878, 882 (La. App. 2 Cir. 1976).

In *National Food and Beverage Co. v. United States*, 105 Fed. Cl. 679 (2012), an inverse condemnation case, the Court of Federal Claims addressed the ownership of clay that was removed from land in Plaquemines Parish for levee repair in the aftermath of Hurricane Katrina. One issue before the court was whether the plaintiff had acquired ownership of the clay from the previous landowner. *Id.* at 692. The contract of sale reserved to the previous owner "all oil, gas and other materials in or under the property." *Id.* at 683. The plaintiff argued that this reservation of rights did not include the clay, but rather referred only to other fugacious natural resources. *Id.* at 692.

The court agreed with the plaintiff and found that it did have a compensable property interest in the clay.[32] Looking to Louisiana law, the court compared the clause to "a typical

---

[31] R. Doc. No. 60-4, at 23, 58
[32] The court in *National Food* found that the term "all oil, gas, and other materials" was ambiguous as to whether it included rights to the clay. 105 Fed. Cl. at 692. This Court finds that

reservation of 'oil, gas, and other minerals,' [in which] the latter term 'necessarily must be read in connection with the things [preceding it] . . . and should be confined to things of that nature." *Id.* at 693 (citing *Holloway Gravel*, 9 So. 2d at 232-33). The court rejected the government's argument that "as a purely technical matter, clay is indeed a material" because "under Louisiana law, that marks only the beginning of the inquiry, not the end." *Id.* at 692. The court noted that a reservation of rights to the clay would have given the previous owner the right to completely strip the land and destroy the surface. *Id.* at 693. Such a reservation would make little sense in this context because "[w]hen a purchaser agrees to permit the seller to retain oil, gas, and other substances, the purchaser rightfully expects that he or she will nonetheless be able to enjoy the surface of the property." *Id.*

Just like the plaintiff in *National Food*, the government did not acquire land that was subject to defendants' right to exploit the clay it contained. *See id.* If defendants had reserved the right to "all . . . other minerals,"[33] as they contend, then the government would have purchased the land without the right to extract the very resource that made the condemnation a necessity. However, defendants were aware that the land was being used for borrow material and levee repair because the purpose for the taking was made explicit in the November 8, 2005

---

the term "all oil, gas, and other minerals" has a well-established technical meaning in Louisiana law and is unambiguous with respect to whether it includes clay. *See Holloway Gravel*, 9 So. 2d at 232-33; *see also Guidry*, 512 F.3d at 181; *Amoco Prod.*, 180 F.3d at 668-69 ("A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight.") (quoting *Tex. E. Transmission Corp.*, 145 F.3d at 741).
  However, even if such phrase is ambiguous, the Court finds "it evident, when the instrument as a whole is construed, that is was not the intention of the parties that the reservation embodied therein included the right to exploit the land for [clay]." *See Holloway Gravel*, 9 So. 2d at 232. As discussed below, it is clear from the circumstances that the parties did not intend for the phrase "all oil, gas, and other minerals" to include rights to the clay.
[33] R. Doc. No. 60-4, at 23, 58.

commandeering letter from the Plaquemines Parish president.[34] Furthermore, the clay had already been taken from the property before negotiations between defendants and the government even began.[35] To interpret the phrase "all oil, gas, and other minerals" as including clay, as defendants suggest, is clearly unreasonable under these circumstances. *See Amoco Prod.*, 180 F.3d at 668-69.

Furthermore, defendants' argument that the complaint filed by the government seeks to take a greater interest than it obtained via contract is without merit. The government makes clear that "the only reason why the United States had to go to condemnation after accepting the present landowners' price for what had been taken[] was to perfect title"[36] and, in any event, the government is equally bound by the contract it seeks to enforce. Defendants still retain "all oil, gas, and other minerals in and under said land and all appurtenant rights for the exploration, development, production, and removal of said oil, gas, and other minerals."[37] However, defendants have no right to compensation for the value of the clay beyond the bargained-for amounts in the agreements to sell.

---

[34] *See* R. Doc. No. 60-8.
[35] R. Doc. No. 60-2, at 2 ("The property was commandeered by the President of Plaquemines Parish on November 8, 2005 and construction began shortly thereafter. Construction was completed by April 2007. Negotiations were initiated on July 6, 2007 . . . ."); *see also* R. Doc. No. 69, at 2 ("[T]he $200,000 sale in fee simple took place <u>after</u> [the] Army Corps had already excavated the borrow material from the property.").
[36] R. Doc. No. 69, at 2 (citing R. Doc. Nos. 60-5, 60-6); *see* R. Doc. No. 60-2, at 2-3.
[37] R. Doc. No. 60-4, at 23, 58.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion is **GRANTED** and the pre-condemnation agreements between the government and defendants are enforced.

New Orleans, Louisiana, March 10, 2014.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE